OPINION
{¶ 1} Brian Curtis appeals the judgment of the Ashtabula County Common Pleas Court, which granted summary judgment in favor of appellee, Board of County Commissioners of Ashtabula County ("the board") and denied Curtis's motion for summary judgment. We affirm.
 {¶ 2} This case arises from two suits filed by the board. It also brings into issue a case filed by Curtis in the Ashtabula County Common Pleas Court, Probate Division, Case No. 97-CV-2, (where Curtis challenged the assessments for the sewer project at issue in this case) and the subsequent settlement of that case.
 {¶ 3} In the instant case, the board initially filed suit seeking an order requiring Curtis to perform certain tests on the sewage system on his property (a trailer park) and make any needed repairs on the system. The board then filed a second action seeking an order requiring Curtis to connect his property to a newly installed public sanitary sewer system (The Driftwood Project.) The trial court consolidated the actions and Curtis filed an answer and nine counter-claims.
 {¶ 4} Relevant to this appeal, in his third counterclaim, Curtis alleged the board assessed his property for the sewer project but he was unable to benefit from the project. In his sixth counterclaim, Curtis alleged the Permit to Install ("PTI") called for the installation of vitrified clay pipe ("VCP") rather than the PVC pipe that was installed. Curtis alleged that by installing PVC pipe, the board breached a settlement agreement reached in Case No. 97-CV-2. And he claimed he was over-assessed $24,000 on the project because PVC pipe was cheaper to install. In his seventh counterclaim, Curtis alleged he could not be assessed for use of the sewage system because it was not available for his use. In his eighth counterclaim, Curtis sought compensation for costs incurred in pumping sewage from his septic tank because the newly installed sewage system was unavailable for his use. In his ninth counterclaim, Curtis alleged he should not be assessed for the sewer project because it was not constructed in accordance with the settlement agreement reached in Case No. 97-CV-2.
 {¶ 5} The parties filed cross-motions for summary judgment. While the motions were pending, the board filed a motion seeking additional injunctive relief because, while this case was pending, Curtis connected his property to the sewer system; however, he failed to satisfy certain testing requirements.
 {¶ 6} The trial court denied the board's motion for summary judgment with respect to Curtis's fourth counterclaim but granted the board summary judgment on Curtis's remaining claims. The trial court ordered Curtis to:
 {¶ 7} "1) Have a qualified person conduct a water exfiltration test and a smoke test on his existing sewage system, in the presence of and under the direction of representatives from the Ashtabula County Department of Environmental Services pursuant to the Sanitary Engineering Code; 2) Demonstrate compliance with the testing requirements pursuant to the Sanitary Engineering Code with the satisfaction of the Sanitary Engineer, and if Curtis' [sic] septic system does not pass such tests, Curtis must make the corrections including necessary repairs and replacements to the current sewage system so that it can pass the required tests demonstrating that the system is watertight; * * *; 4) Abandon his current septic tank by filling it in after compliance with testing requirements; and 5) Connect the present septic system, which accesses both the manufactured home park and the county line road property to the Driftwood sanitary sewer system as ordered to do so on April 1, 2001; 6) Pay the assessment amounts as stated in the November 18, 1998 Settlement Agreement, all penalties and interest; 7) Pay the usage fees set by the Commissioners, including past sewer rents; and 8) If Curtis chooses to separately connect the county line property to the Driftwood sanitary sewer, all connections must be properly made according to the Ashtabula County Sanitary Engineering Code."
 {¶ 8} Curtis subsequently dismissed his fourth counterclaim.
 {¶ 9} Curtis filed a timely appeal from the trial court's grant of summary judgment. The board moved to dismiss the appeal for lack of a final appealable order. The board argued the trial court's judgment did not dispose of the board's motion for additional injunctive relief. We remanded the matter to the trial court. On remand, the trial court found the issue of additional injunctive relief to be moot because the parties had entered into a settlement agreement as to the remaining claims for injunctive relief (we refer to this settlement agreement as the "April 2004" settlement.) This settlement agreement disposed of the remaining claims and rendered the trial court judgment final and appealable.
 {¶ 10} Curtis presents the following assignments of error for our review
 {¶ 11} "[1.] The trial court erred in granting plaintiff's motion for summary judgment for injunctive relief and in not granting defendant's motion for summary judgment.
 {¶ 12} "[2.] The trial court erred in granting appellee's motion for summary judgment on appellant's third cause of action on his counter-claim.
 {¶ 13} "[3.] The trial court erred in granting appellee's motion for summary judgment on appellant's sixth cause of action on his counter-claim.
 {¶ 14} "[4.] The trial court erred in granting appellee's motion for summary judgment on appellant's seventh cause of action on his counter-claim.
 {¶ 15} "[5.] The trial court erred in granting appellee's motion for summary judgment on appellant's eighth cause of action on his counter-claim.
 {¶ 16} "[6.] The trial court erred in granting appellee's motion for summary judgment on appellant's ninth cause of action on his counter-claim."
 {¶ 17} We review a grant of summary judgment de novo. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105, i.e., independently and without deference to the trial court's determination. Lexford PropertiesMgmt., L.L.C. v. Lexford Properties Mgmt., Inc., 147 Ohio App.3d 312,315.
 {¶ 18} Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Harless v. Willis DayWarehousing, Co., Inc. (1978), 54 Ohio St.2d 64, 66.
 {¶ 19} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293.
 {¶ 20} If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing there is a genuine issue for trial. Id.
 {¶ 21} Curtis presents five issues under his first assignment of error:
 {¶ 22} "[1.] Whether the trial court erred in considering unverified exhibits or irrelevant exhibits."
 {¶ 23} Under this issue, Curtis challenges the trial court's reference to a study of the Driftwood area (where the sewer system was eventually installed) and other documents. The documents were not sworn or verified as required by Civ.R. 56(C) and Curtis objected to their consideration before the trial court. Nonetheless, the trial court relied upon these exhibits when it granted summary judgment in favor of the board. We find no error.
 {¶ 24} All of the documents challenged by Curtis relate to the authority of the board to require Curtis to connect his properties to the sewer system and the county's compliance with R.C. 6117.51.[1] As indicated by the trial court's entry on remand, Curtis has connected his properties to the sewer system; therefore, this issue is moot.
 {¶ 25} The remaining issues under Curtis's first assignment of error are:
 {¶ 26} "[2.] Whether the [b]oard of health of the health district was required to pass a resolution stating the reason for the sewer project was to reduce or eliminate an existing health problem before the [c]ounty [c]ommissioners could order [d]efendant to connect his sewer to the [c]ounty's system."
 {¶ 27} "[3.] Whether the Ashtabula County Sanitary Engineering Code has been pre-empted by the state insofar as its applicability to manufactured home parks is concerned."
 {¶ 28} "[4.] Whether [d]efendant-[a]ppellant presented an issue for trial on the requirement of water and smoke testing."
 {¶ 29} "[5.] Whether appellant is required to abandon his current septic system."
 {¶ 30} On April 15, 2004, subsequent to the filing of the briefs in this case, and on remand from this court, the parties reached a settlement agreement, which the trial court incorporated into an entry filed April 21, 2004 (the April 2004 settlement referenced above). There, the parties reached a settlement agreement as to the issue of Curtis connecting his property to the sewage system, the requirements for testing, and Curtis's abandonment of his septic system. This settlement agreement renders the above stated issues moot. To the extent the preemption issue (issue 3) may not be moot, we address it in our analysis of Curtis's fourth assignment of error.
 {¶ 31} Appellant's first assignment of error is without merit.
 {¶ 32} In his second assignment of error, Curtis contends the trial court erred in granting the board summary judgment on his third counterclaim. Curtis states the issue under this assignment of error as "Whether [a]ppellees were wrongful in their refusal to permit [a]ppellant to connect to the public sewer without testing." As we discussed under Curtis's first assignment of error, the parties have reached a settlement agreement with respect to the issue of testing, therefore, this issue is moot. To the extent the preemption issue may not be moot, we address it in our analysis of Curtis's fourth assignment of error.
 {¶ 33} In his third assignment of error, Curtis contends he is entitled to an adjustment of the assessments for his property because the county used PVC pipe instead of vitrified clay pipe. Curtis presented an affidavit in which he averred PVC pipe was less expensive than vitrified clay pipe and cheaper to install. Curtis contends he agreed to a $95,000 assessment reflected in the settlement of Case No. 97-CV-2 based on the representation that vitrified clay pipe would be installed. Curtis also avers he would not have agreed to the settlement if he had known PVC pipe would be used.
 {¶ 34} In Case No. 97-CV-2, Curtis challenged the Ashtabula County Commissioners necessity, the boundaries and the tentative apportionment of assessments for the Driftwood Sewer Project. The parties reached a settlement agreement in which Curtis agreed to pay an assessment of $95,000. The probate court approved the settlement agreement and it was filed of record on November 18, 1998.
 {¶ 35} The settlement agreement makes no mention of the type of pipe to be used in the project. Further, the settlement agreement states, "Regardless of the ultimate cost of construction of the Improvement, the adjusted assessment * * * shall not be further adjusted * * *." Thus, Curtis has waived any right to challenge the assessment based on the cost of the project. Appellant's third assignment of error is without merit.
 {¶ 36} In his fourth assignment of error, Curtis claims the trial court erred in granting summary judgment to the board on his seventh counterclaim. Curtis frames the issue as "Whether [a]ppellee's sewers were `available' to [a]ppellant so that [a]ppellee could charge [a]ppellant usage fees."
 {¶ 37} Under this assignment of error, Curtis argues R.C. 3733.02[2]
preempts the Ashtabula County Engineering Code as promulgated pursuant to R.C. 6117.01(D).[3] Curtis contends the board had no authority to require him to perform tests prior to connecting to the sewer system, and that because the board refused to allow him to connect to the system without such testing, the sewer was unavailable to him, and he cannot be assessed usage fees. We disagree.
 {¶ 38} In Windham Twp. v. Lomack Petroleum, Inc. (Dec. 5, 1986), 11th Dist. No. 1644, 1986 Ohio App. LEXIS 9708, we held:
 {¶ 39} "It is a well-established principle of law that where the state has enacted a comprehensive scheme of regulation of an activity, a local ordinance [that] conflicts with a state law is pre-empted and unenforceable. The test used in determining whether a local ordinance conflicts with a state statute is whether or not such ordinance prohibits that which the statute permits, or vice versa." (Internal citations omitted.) Id. at 9-10.
 {¶ 40} Curtis contends the language of R.C. 3733.02(A)(1) granting the public health council exclusive power, prohibits any regulation by the county. Here, however, the county is not regulating the trailer park per se but only the requirements for connection to the county sewer system. Such regulations do not prohibit what the state law allows or vice versa. Thus, the county's regulations are not preempted by R.C.3733.02(A)(1).
 {¶ 41} Curtis's only basis for contending the sewer system was unavailable for his use was his unwillingness to comply with the testing requirements. Because we have determined the testing requirements were not preempted by state law, the sewer was available for Curtis's use and the county was required to assess usage fees. R.C. 6117.02(A). Appellant's fourth assignment of error is without merit.
 {¶ 42} In his fifth assignment of error, Curtis contends a genuine issue of material fact exists as to, "Whether [a]ppellees are liable for [a]ppellant's pumping costs because he is unable to connect to the public sewers without having the lines tested first."
 {¶ 43} Curtis bases this argument on his contention that R.C.3733.02(A)(1) preempts the county's testing requirements. For the reasons set forth in our analysis of appellant's fourth assignment of error, appellant's fifth assignment of error is without merit.
 {¶ 44} In his sixth assignment of error, Curtis frames the issue as, "Whether [a]ppellant is liable for the payment of assessments when [a]ppellee failed to construct sewers in accordance with the April 1, 1997 permit to install."
 {¶ 45} In this assignment of error, Curtis again challenges his assessment based on the county's use of PVC pipe instead of vitrified clay pipe. He also claims the county failed to install laterals for Lake County users.
 {¶ 46} As we discussed under appellant's third assignment of error, the settlement in Case No. 97-CV-2 (upon which Curtis bases his argument) makes no mention of the type of pipe to be used in the project. Nor does it mention laterals for Lake County users. Most importantly, the settlement agreement explicitly precludes Curtis from challenging the assessment. Appellant's sixth assignment of error is without merit.
 {¶ 47} For the foregoing reasons, each of appellant's assignments of error is without merit and the judgment of the Ashtabula County Court of Common Pleas is affirmed.
O'Neill, J., Grendell, J., concur.
[1] This section provides in relevant part:
"If the board of health of the health district within which a new public sewer construction project is proposed or located passes a resolution stating that the reason for the project is to reduce or eliminate an existing health problem or a hazard of water pollution, the board of county commissioners of the county, by resolution, may order the owner of any premises located in a sewer district in the county, the owner's agent, lessee, or tenant, or any other occupant of the premises to connect the premises to the sewer for the purpose of discharging sewage or other waste that the board determines is originating on the premises, to make use of the connection, and to cease the discharge of the sewage or other waste into a cesspool, ditch, private sewer, privy, septic tank, semipublic disposal system as defined in division (B)(1)(a) of section 3709.085 of the Revised Code, or other outlet if the board finds that the sewer is available for use and is accessible to the premises following a determination and certification to the board by a registered professional engineer designated by it as to the availability and accessibility of the sewer."
[2] This section provides in relevant part:
"The public health council, subject to Chapter 119. of the Revised Code, shall adopt, and has the exclusive power to adopt, rules of uniform application throughout the state governing the review of plans, issuance of flood plain management permits, and issuance of licenses for manufactured home parks; the location, layout, density, construction, drainage, sanitation, safety, and operation of those parks; * * *." R.C.3733.02(A)(1).
[3] "The board of county commissioners may adopt, publish, administer, and enforce rules for the construction, maintenance, protection, and use of county-owned or county-operated sanitary and drainage facilities outside municipal corporations, and of sanitary and drainage facilities within municipal corporations that are owned or operated by the county or that discharge into sanitary or drainage facilities owned or operated by the county, including, but not limited to, rules for the establishment and use of any connections, the termination in accordance with reasonable procedures of sanitary service for the nonpayment of county sanitary rates and charges and, if so determined, the concurrent termination of any county water service for the nonpayment of those rates and charges, the termination in accordance with reasonable procedures of drainage service for the nonpayment of county drainage rates and charges, and the establishment and use of security deposits to the extent considered necessary to ensure the payment of county sanitary or drainage rates and charges. The rules shall not be inconsistent with the laws of this state or any applicable rules of the director of environmental protection."